# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF MARYLAND
# (NORTHERN DIVISION)

| | |
|---|---|
| ELIZABETH MCMILLAN-MCCARTNEY, 2885 Baynum Hill Road California, KY 41007<br><br>*Plaintiff,*<br><br>v.<br><br>CALDWELL MCMILLAN, JR., 1886 Crownsville Road Annapolis, MD 21401<br><br>*Defendant*. | Civil Case No.: 18-3331 |

## COMPLAINT

Plaintiff, Elizabeth McMillan-McCartney, by her undersigned counsel, Suvita Melehy and Melehy & Associates, LLC, hereby brings suit against Defendant, Caldwell McMillan, Jr. ("Caldwell" or "Defendant") (collectively the "Parties") for the following: Count I: Sale of Real Property in Lieu of Partition, pursuant to MD. CODE ANN., REAL PROP § 14-107; Count II: Accounting and Sharing of Profits, pursuant to MD. CODE ANN., REAL PROP § 14-106; Count III: Common Law Claim for Share of Profits Earned from Homestead Property; Count IV: Common Law Claim for Contribution; Count V: Common Law Equitable Lien; Count VI: Liability for Waste; Count VII: Breach of Contracts - Written; Count VIII: Breach of Contract – Oral; Count IX: Common Law Claim for Unjust Enrichment; Count X: Quantum Meruit; Count XI: Common Law Ouster.

## JURISDICTION

1. The jurisdiction of this Court is based upon 28 U.S.C. § 1332 because the Plaintiff and the Defendant are citizens of different states. Plaintiff is a citizen of the State of Kentucky and the Defendant is a citizen of the State of Maryland. Additionally, the amount in controversy exceeds $75,000.00.

2. This Court has *in personam* jurisdiction over Defendant because he resides in and conducts business in this District and/or a substantial part of the events giving rise to these claims occurred in this District.

## VENUE

3. Defendant resides in Anne Arundel County, Maryland. Therefore, venue is proper under 28 U.S.C. § 1391.

## PARTIES

4. Plaintiff is an adult resident of the State of Kentucky.

5. Defendant is an adult resident of Anne Arundel County, Maryland.

6. Plaintiff and Defendant currently own, as tenants in common with, property located at 1886 Crownsville Road, Annapolis, Maryland 21401 (the "Homestead Property"), which is the subject of this controversy.

## STATEMENT OF FACTS

1. The Parties' mother, Sylvia Ross-McMillan, passed away on January 16, 1989. Her estate was opened on or about February 3, 1989, in the Orphans' Court for Anne Arundel County, Maryland. Plaintiff is the Personal Representative of her estate.

2. The Parties' father, Caldwell McMillan, Sr., passed away on December 3, 1989 and his estate was opened in the Orphans' Court for Anne Arundel County, Maryland, on or

about December 14, 1989. Defendant is the Personal Representative of his estate.

3. The Parties' parents divorced prior to their passing.

4. As of the date of this complaint, both estates remain open in the Orphans' Court for Anne Arundel County, Maryland.

5. Prior to their passing, the Parties' parents formed a corporation, Sylmac, Inc., for the purpose of developing a tract of land they owned in Anne Arundel County, Maryland, into a residential subdivision (Twin Hills) and market and sell the individual lots. The parents passed away before the development began and the Parties, as personal representatives of their parents' respective estates, assumed control of Sylmac, Inc, and continued the development project. The Parties agreed to each be responsible for an equal share of Sylmac, Inc.'s debts incurred in the course of developing the subdivision and to pay them from the proceeds of any inheritance they received from their parents' estates once the probate process was completed.

6. The development of the Twin Hills subdivision continued until 2017 when the final lot was sold.

7. Starting in 1990 and continuing to the present, Plaintiff has personally paid almost all of Sylmac Inc.'s debts and obligations including but not limited to taxes on the individual lots in the subdivision, maintenance charges, filing fees to the State Department of Assessment and Taxation, and attorney's fees and costs incurred in litigation that the corporation was involved in and in connection with its Chapter 11 bankruptcy filing.

8. Defendant has not reimbursed Plaintiff in accordance with their agreement to share equally the debts and obligations of the corporation. The Defendant owes Plaintiff a total of $18,316.52.

9. Defendant also agreed, in or around 1990, to pay Plaintiff $40.00 per hour for any

work she performed either on behalf of Sylmac, Inc., or to aid the Defendant in the administration of their father's Estate and to reimburse her for expenses. Beginning in 1990 and continuing to the present, Plaintiff performed many such services, including, legal research, assisting legal counsel with document drafting and at hearings, tax preparation, bookkeeping, clerical and administrative work. The services Plaintiff performed for Defendant in connection with their father's estate were reasonable and necessary at the time and conferred a benefit on the Defendant as the personal representative of their father's estate. Defendant never paid Plaintiff the promised compensation for the reasonable value of her services or reimbursed her for the expenses she paid and has since repudiated the agreement to pay her.

10. One of the lots on the land became known as the Homestead Property (hereinafter the "Homestead Property") was the family home of the Parties and their parents and after the parents' passing ownership of the Homestead Property was transferred to their respective estates, with each estate owning a 50 percent interest. The Homestead Property is improved with a single-family home, and a separate apartment located above a tractor shed which is on the Homestead Property. The apartment has a bathroom, living room, dining room, two bedrooms and a full bath.

11. On April 25, 1990, the Parties, in their capacity as personal representatives, conveyed the Homestead Property to themselves individually as tenants in common with each owning a 50 percent fee simply interest.

12. In May of 1990, Plaintiff agreed to temporarily transfer her interest in the Homestead Property to Defendant to enable him to obtain a mortgage in the amount of $136,500.00 (to be secured by the Homestead Property) and Defendant agreed to reconvey Plaintiff's one-half interest back to her once the mortgage was approved – which he did on May

4

23, 1990. Defendant further agreed that he would timely make the mortgage payment and would also pay off the mortgage in full once he received his share of the inheritance from their parents' estates. The Parties' agreement was memorialized in a written contract, dated May 23, 1990, which they both signed.

13. The money from the mortgage was used solely for the Defendant's benefit and not for the Plaintiff's benefit. Also, Plaintiff was not liable for the mortgage debt.

14. Defendant failed to make the mortgage payments as promised and the mortgage went into default. In order to preserve the Homestead Property and prevent foreclosure, Plaintiff made mortgage payments on Defendant's behalf.

15. On July 23, 1993, the Parties entered into a written contract whereby Defendant acknowledged his indebtedness to Plaintiff for the mortgage payments she made on his behalf and again agreed to repay Plaintiff for the monies loaned to him for the mortgage payments out of his inheritance from their parents' estate and to pay off the remaining balance of the mortgage if any. Defendant also agreed that any future payments loaned to him by Plaintiff to pay the mortgage would similarly be repaid to her when the father's estate is closed.

16. On or about January 2008, Plaintiff advanced the Defendant the sum of $105,067.73 to pay off the mortgage in full. This amount was paid by Plaintiff directly to the mortgage company on behalf of the Defendant and is additional monies loaned by Plaintiff to the Defendant.

17. Between May 1990 and January 2008 (when the mortgage was paid off) Plaintiff made monthly mortgage payments of approximately $1,500.00 and made a final payment of $105,067.73 in 2008 to pay off the mortgage. The total amount paid by Plaintiff in connection with Defendant's mortgage is $411,000.000.

18. In addition, after January 22, 2008, when the mortgage was paid off, Plaintiff continued to pay the full property taxes and hazard insurance on the property – which Defendant refused to pay until the Orphans' Court ordered him to do so sometime in 2017.

19. The total amount still owed to Plaintiff by the Defendant for her payment of the mortgage, insurance and property taxes on the Homestead Property is $376.185.00.

20. Defendant made sporadic payments to Plaintiff between 1999 and 2017 as partial reimbursement for either: 1) Sylmac, Inc.'s expenses paid by Plaintiff; 2) services rendered by Plaintiff to Sylmac, Inc. or their father's estate; and 3) mortgage payments and carrying charges paid by Plaintiff on Defendant's behalf.

21. At some point Defendant assigned a $34,607.72 receivable due Defendant to Plaintiff as partial repayment of the monies loaned to him by Plaintiff.

22. At all times relevant to this Complaint, the Defendant and his family have occupied the main dwelling house situated on the Homestead Property, and Plaintiff reserved for her private use an apartment located above the tractor shed which is adjacent to the main dwelling house. Plaintiff furnished the apartment and kept personal property and effects there and used it whenever she and her family traveled to Maryland.

23. Beginning in or about January 1999 through January 2007, Defendant unilaterally rented Plaintiff's apartment to several migratory workers without Plaintiff's approval or consent. Defendant removed all of Plaintiff's personal belongings out of the apartment. Plaintiff learned about this in May of 1999 when she informed Defendant she and her family were coming to visit and he told her that the apartment was rented out and she could not use it.

24. Defendant has never provided Plaintiff with any type of accounting of the rental income he received from the Homestead Property and the associated expenses and has denied

Plaintiff access to the apartment on the Homestead Property for the last 234 months.

25. Additionally, the Defendant, has caused such damage to the apartment that it is no longer habitable. Specifically, the kitchen appliances are missing and there is severe structural damage to the apartment, including a hole in the roof which is letting in water every time it rains.

26. Plaintiff wants to sell the Homestead Property and Defendant does not.

**COUNT I**
**(MD. CODE ANN., REAL PROP § 14-107)**
**(Sale In Lieu Of Partition – Homestead Property)**

27. Plaintiff repeats and incorporates by reference herein the allegations contained in Paragraphs 1-26 above.

28. Pursuant to MD. CODE ANN., REAL PROP § 14-107, Plaintiff requests a sale in lieu of partition of the Homestead Property.

29. The nature of the Homestead Property makes it indivisible without loss or injury to the Parties. This indivisibility makes the Homestead Property subject to sale and division of money resulting from the sale in portions equal to each party's said interest after balancing the equities in Plaintiff's favor to account for money paid by Plaintiff towards Defendant's mortgage debt, the property taxes and insurance she paid, and her share of unaccounted for rental income from the Homestead Property retained by Defendant.

WHEREFORE, Plaintiff requests:

a. The Court-ordered sale of the Homestead Property and an equitable division of the proceeds among the Parties according to their rights; or alternatively

b. That the Court order Defendant to convey his interest in the Homestead Property to Plaintiff as partial satisfaction of an equitable lien arising from Plaintiff having paid the mortgage, insurance and property taxes, (with the value of the lien to be determined by the

Court) on the Homestead Property held by Plaintiff;

    c.       Such other and any relief as this Court may deem appropriate.

## COUNT II
### (MD. CODE ANN., REAL PROP § 14-106)
### (Accounting/Sharing of Profits – Homestead Property)

30. Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1-26 above.

31. Plaintiff has a statutory and common law right to share equally in the profits generated by the Homestead Property.

32. Defendant has failed to share any of the profits generated by the Homestead Property, including Plaintiff's share of rental income that Defendant earned by renting the separate apartment situated on the Homestead Property.

33. Since Defendant has never provided Plaintiff with any type of accounting which itemizes the total amount of rental income he earned Plaintiff cannot say for certain how much money she is entitled to at this time without the benefit of discovery.

34. Pursuant to MD. CODE ANN., REAL PROP § 14-106, Plaintiff is entitled to an accounting by the Defendant of all revenue generated by the Homestead Property.

WHEREFORE, Plaintiff requests that:

    a.       Judgment be entered against the Defendant for one half of the amount of the profits generated by the Homestead Property in an amount not less than $65,000.00;

    b.       That Defendant be ordered to produce an accounting of all revenue received and all costs and expenses incurred based on his ownership and use of the Homestead Property from January 1, 1990 to the present; and

    c.       For such other relief that the Court may deem just and proper.

## (COUNT III)
## (Common Law Sharing of Profits Generated by the Homestead Property)

35. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1-26 above.

36. With the exception of a one-day period on May 23, 1990, the Parties have owned the Homestead Property, as tenants in common, with each holding an equal share in fee simple. Accordingly, Plaintiff had an absolute right to receive 50 percent of the profits generated by the Homestead Property.

37. The Defendant has unilaterally rented part of the Homestead Property for profit without the consent of Plaintiff and has retained the corresponding revenue. Defendant has never given Plaintiff an accounting showing the amount of income generated by renting part of the Homestead Property and has failed to pay Plaintiff her share of the rental income.

WHEREFORE, Plaintiff requests that:

a. Judgment be entered against the Defendant for one-half of the amount of the income generated by the Homestead Property from January 1990, to the present in an amount not less than $65,000.00;

b. The Defendant be ordered to produce an accounting of all revenue received and all costs and expenses incurred based on the ownership and use of the Homestead Property from January 1990 to the present; and

c. For such other relief that the Court may deem just and proper.

## COUNT IV
## (Common Law Contribution)

38. Plaintiff repeats and incorporates by reference the allegations contained in

paragraphs 1-26 above.

39. Plaintiff is entitled to contribution from Defendant for liens and encumbrances secured by the Homestead Property which Plaintiff paid.

40. Since 1990, Plaintiff has made mortgage payments on behalf of the Defendant on a loan which was secured by the Homestead Property. In addition to the mortgage payments, Plaintiff has continued to pay the property taxes and hazard insurance on the Homestead Property.

41. At the same time, Defendant has continually failed to fulfill his obligation, as a tenant in common, to pay his half-share of the costs and necessary expenses, including the, property taxes, and insurance.

42. Due to the Defendant's failure to pay half of the costs and necessary expenses of the Property, the Plaintiff is entitled to reimbursement from Defendant for one-half of all expenses she has incurred from January 1 1990 to the present, which include but are not limited, property taxes and insurance on the Homestead Property and full reimbursement for the amount paid towards the mortgage.

WHEREFORE, Plaintiff requests that:

a. Judgment be entered against Defendant in an amount no less than $376,185.00 for one-half of the costs and necessary expenses associated with the Property which Plaintiff has paid from January 1 1990 to the present and the amount of the mortgage Plaintiff paid on behalf of the Defendant less any loan repayments made by the Defendant; and

b. For such other relief as the Court may deem just and proper.

## COUNT V
### (Common Law Equitable Lien)

43. Plaintiff repeats and incorporates by reference the allegations contained in

paragraphs 1-26 above.

44. Plaintiff asserts that she has an equitable lien against the Defendant's fee simple interest in the Homestead Property.

45. The lien arises from payments including but not limited to mortgage payments, property taxes, and insurance, that Plaintiff paid in connection with the Homestead Property and for which Defendant never reimbursed her for his share of these common obligations and for the mortgage payments she made on his behalf.

WHEREFORE, Plaintiff requests that:

a. the Court enter judgment against Defendant in the amount of no less than $376,185.00 which represents Defendants one-half share of the costs and necessary expenses associated with the Property and the full amount of the mortgage Plaintiff paid on his behalf;

b. the Court grant Plaintiff has an equitable lien against the Defendant's interest in the Homestead Property in the amount no less than $376,185.00; and

c. for such other relief that the Court may deem just and proper.

## COUNT VI
### (MD. CODE ANN., REAL PROP § 14-102)
### (Liability for Waste)

46. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1-26 above.

47. Defendant is liable to Plaintiff for actual damage he caused to the Homestead Property without Plaintiff's express or implied authorization.

48. The damage caused by the Defendant has substantially reduced the value of the Homestead Property to the financial detriment of Plaintiff, the co-tenant.

WHEREFORE, Plaintiff requests that the Court enter judgment against Defendant in an amount equal to the necessary cost to ameliorate the waste caused by the Defendant and for an

injunction to stay the waste.

## COUNT VII
### (Breach of Contract - Written)

49. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1-26 above.

50. The Parties entered into two express written contracts on May 23, 1990 and July 23, 1993, respectively, wherein Defendant agreed to repay Plaintiff all of the mortgage payments that she made on his behalf towards the mortgage which was secured by the Property and for which only Defendant was liable.

51. To date, Plaintiff has paid approximately $411,000.00 on Defendant's behalf in connection with the mortgage and he has breached the foregoing express written contracts by failing to repay the Plaintiff the amounts she paid towards the mortgage as required by the contracts. Defendant's failure to repay Plaintiff constitutes a breach of the Parties' express agreement as a result of which, Plaintiff has suffered damages and is still owed approximately $376,184.00 by the Defendant.

WHEREFORE, Plaintiff requests that:

a. the Court enter judgment against Defendant in an amount no less than $376,184.00 which represents the amount of money Plaintiff is still owed pursuant to the Parties' express contract identified above; and

b. for such other relief as the Court may deem just and proper.

## COUNT VIII
### (Breach of Contract - Oral)

52. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1-26 above.

53. In or around 1990 the Parties agreed orally to share expenses associated with Sylmac, Inc. and Defendant agreement to pay Plaintiff for services rendered to their father's estate at the rate of $40.00 per hour and reimburse her for expenses. Defendant breached the Parties' oral contract by: 1) refusing to repay the Plaintiff his share of costs and expenses incurred by Sylmac, Inc.; 2) refusing to reimburse Plaintiff for the reasonable value of the al services she provided to Defendant as personal representative of their father's estate and in connection with Sylmac, Inc.; and 3) refusing to reimburse Plaintiff for the out-of-pocket expenses she advanced on his behalf. Defendant was always aware Plaintiff was providing these services and advancing the costs on his behalf and never objected.

54. All services rendered by Plaintiff were reasonable at the time they were provided.

55. Defendant's failure to repay Plaintiff constitutes a breach of the Parties' oral contract and as a result of the breach Plaintiff has suffered damages.

WHEREFORE, Plaintiff requests that:

a. the Court enter judgment against Defendant in an amount no less than $61,8000.17, which represents the amount of money Plaintiff is still owed pursuant to the Parties' oral contract identified above; and

b. for such other relief as the Court may deem just and proper.

## COUNT IX
### (Unjust Enrichment)

56. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1-26 above.

57. The payment by Plaintiff of the mortgage secured by the Homestead Property which was solely in Defendant's name, the property taxes, insurance and other expenses of the Homestead Property conferred a financial benefit upon the Defendant in an amount in an amount

equal to the amount of the mortgage that Plaintiff paid, one half of the property taxes and insurance for which the Parties as tenants in common were equally responsible, but which Plaintiff paid by herself.

58. Defendant has not paid his share of the expenses which were necessary for the maintenance and preservation of the Homestead Property yet he has continued to occupy the Homestead Property since 1990.

59. Defendant's acceptance and retention of his one-half interest in the Property as well as his living on the Property for over 28 years despite making only nominal contributions toward the mortgage payments, real estate taxes and insurance upon which the Defendant is jointly and severally liable make it inequitable for Defendant to retain these benefits without repaying Plaintiff their value.

WHEREFORE, Plaintiff requests that:

a. the Court enter a judgment against the Defendant in the amount no less than $437,985.00 which is the amount by which the Defendant has been enriched; and

b. for such other relief that the Court may deem just and proper.

## COUNT X
### (Quantum Meruit)

60. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1-26 above.

61. Plaintiff rendered valuable services to the Defendant by performing services including but not limited to accounting, tax preparation, assisting counsel with legal research and document review and preparation, in connection with the development of the Twin Hills subdivision and in connection with aiding the Defendant as the Personal Representative of their father's estate.

14

62. Plaintiff rendered these services with the intention of receiving compensation from the Defendant and the Parties agreed that this would be the case but Defendant has failed to pay Plaintiff for her services.

63. Defendant was fully aware that Plaintiff was providing these services and received the benefit of the services knowing that Plaintiff expected to be paid for her work.

64. All of the services were reasonable and necessary at the time they were performed and they conferred a benefit on the Defendant.

WHEREFORE, Plaintiff requests that:

a. the Court enter judgment against the Defendant in an amount no less than $18,218.00 which is the reasonable value, *quantum meruit*, of the services rendered by Plaintiff to Defendant; and

b. for such other relief as the Court may deem just and proper.

## COUNT XI
### (Ouster)

65. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1-26 above.

66. As a tenant in common with a 50 percent interest in the Homestead Property, Plaintiff was entitled to use and enjoyment of the Property whenever she wished.

67. Plaintiff maintained a separate apartment on the Homestead Property which she used frequently whenever she visited Maryland from Kentucky.

68. In or about February of 1999, Defendant prevented Plaintiff from having use of the Homestead Property by removing her personal effects from the apartment and renting it out. When Plaintiff tried to use the apartment, Defendant told her she could not because it was occupied.

15

69. Defendant's actions were unequivocal and notorious and caused Plaintiff to suffer damages from the loss of the use of the Homestead Property.

70. Plaintiff has not been able to use the apartment since 1998, first due to it being rented and then because Defendant has since caused damage to it, making it uninhabitable.

WHEREFORE, Plaintiff requests that:

a. the Court enter judgment against Defendant in an amount no less than $53,000.00 which is the for the fair rental value of the apartment for the period during which Plaintiff was ousted from the Homestead Property; and

b. for such other relief the Court may deem just and proper.

Respectfully submitted,

_____/s/_____
Suvita Melehy
MD Fed. Bar No.: 13068
MELEHY & ASSOCIATES LLC
8403 Colesville Road Suite 610
Silver Spring, Maryland 20910
Telephone:   (301) 587-6364
Facsimile:    (301) 587-6308
Email: smelehy@melehylaw.com