**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| ELIZABETH MCMILLAN-MCCARTNEY, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *  Civil Case No.: SAG-18-3331 |
| | * |
| CALDWELL MCMILLAN, JR., | * |
| | * |
| Defendant. | * |
| | * |

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

**MEMORANDUM OPINION**

Plaintiff Elizabeth McMillan-McCartney ("Plaintiff") filed suit against *pro se* Defendant Caldwell McMillan, Jr. ("Defendant"), alleging eleven counts regarding a residential property owned by Plaintiff and Defendant as tenants in common. ECF 1. Specifically, Plaintiff alleges Sale in Lieu of Partition, pursuant to Md. Code Ann., Real Prop. § 14-107 (Count I); Accounting/Sharing of Profits, pursuant to Md. Code Ann., Real Prop. § 14-106 (Count II); Common Law Sharing of Profits Generated by the Homestead Property (Count III); Common Law Contribution (Count IV); Common Law Equitable Lien (Count V); Liability for Waste (Count VI); Breach of Written Contract (Count VII); Breach of Oral Contract (Count VIII); Unjust Enrichment (Count IX); Quantum Meruit (Count X); and Ouster (Count XI). *Id.* Presently pending is Defendant's Motion to Dismiss ("the Motion"). ECF 22. Plaintiff filed an Opposition, ECF 23, and Defendant filed a Reply, ECF 24. For the reasons stated below, I shall grant in part and deny in part the Motion, ECF 22.

## I.    Factual Background[1]

Plaintiff and Defendant are siblings who currently own, as tenants in common, property at 1886 Crownsville Road in Annapolis, Maryland (the "Homestead Property"). ECF 1 at 2. The parties' parents, who were divorced, passed away in 1989. *Id.* ¶¶ 1-3. Plaintiff is the personal representative of their mother's estate, while Defendant is the personal representative of their father's estate. *Id.* Both estates remain open in the Orphans' Court for Anne Arundel County, Maryland. *Id.* ¶ 4.

The parties' parents had created a corporation, Sylmac, Inc. ("Sylmac"), to develop a tract of land they owned in Anne Arundel County, Maryland, into a residential subdivision, and to market and sell the individual lots. *Id.* ¶ 5. The development began after the parties' parents died, and the parties assumed control of Sylmac to continue the development project. *Id.* The parties agreed that they would each be responsible for an equal share of Sylmac's debts incurred during development, and would pay those debts from the proceeds of any inheritance they received from their parents' respective estates. *Id.* Plaintiff alleges that, starting in 1990 and continuing to the present, Defendant failed to pay his share of Sylmac's debts, totaling $18,316.52. *Id.* ¶¶ 7, 8.

In or around 1990, Plaintiff alleges that Defendant agreed to pay Plaintiff $40.00 per hour, plus expenses, for any work she performed on behalf of Sylmac, or on behalf of Defendant in his administration of their father's estate. *Id.* ¶ 9. Plaintiff alleges that Defendant has never paid her the promised compensation for the reasonable value of her services, and that Defendant has repudiated the agreement to pay her. *Id.*

---

[1] The facts are derived from Plaintiff's Complaint, ECF 1. Although Defendant disputes many of the facts contained herein, for purposes of a motion to dismiss, this Court must accept all facts pled in the Complaint as true. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).

One of the lots on the developed land was the Homestead Property, improved with a single-family home and a two-bedroom apartment located above a tractor shed. *Id.* ¶ 10. Upon the deaths of the parties' parents, the Homestead Property was transferred to the respective estates, with each estate owning a 50 percent interest. *Id.* On or about April 25, 1990, the parties conveyed the Homestead Property to themselves individually as tenants in common, with each party owning a 50 percent fee simple interest. *Id.* ¶ 11. In or around May of 1990, Plaintiff agreed to temporarily transfer her interest in the Homestead Property to Defendant, to allow him to obtain a $136,500.00 mortgage secured by the Homestead Property. *Id.* ¶ 12. In return, Defendant conveyed Plaintiff's one-half interest back to her when the mortgage was approved, on or about May 23, 1990. *Id.* Defendant also agreed to make the mortgage payments as required, and to pay off the mortgage in full when he received his inheritance from their father's estate. *Id.* This agreement was memorialized in a writing signed by both parties on May 23, 1990. *Id.*; ECF 23-2 at 1-2.

Plaintiff alleges that Defendant failed to make the mortgage payments, and the mortgage went into default. ECF 1 ¶ 14. To prevent foreclosure on the Homestead Property, Plaintiff made mortgage payments on Defendant's behalf. *Id.* On or about July 23, 1993, the parties executed a written agreement, under which Defendant "acknowledged his indebtedness to Plaintiff for the mortgage payments she made on his behalf and again agreed to repay Plaintiff for the monies loaned to him for the mortgage payments out of his inheritance from their parents' estate and to pay off the remaining balance of the mortgage if any," and Defendant agreed "that any future payments loaned to him by Plaintiff to pay the mortgage would similarly be repaid to her when the father's estate is closed." *Id.* ¶ 15; ECF 23-2 at 3-4.

Between May of 1990 and January of 2008, Plaintiff alleges that she made monthly mortgage payments of approximately $1,500.00. ECF 1 ¶¶ 16, 17, 18. She made a final payment

of $105,067.73 on or about January 22, 2008. *Id.* Plaintiff alleges that the total amount she paid in connection with Defendant's mortgage was $411,000.00. *Id.* ¶ 17. After the mortgage was paid off, Plaintiff continued to pay the full property taxes and hazard insurance on the Homestead Property, although the Orphans' Court ordered Defendant to pay those expenses in 2017. *Id.* ¶ 18. Plaintiff contends that "Defendant made sporadic payments to Plaintiff between 1999 and 2017 as partial reimbursement for either: 1) Sylmac, Inc.'s expenses paid by Plaintiff; 2) services rendered by Plaintiff to Sylmac, Inc. or their father's estate; and 3) mortgage payments and carrying charges paid by Plaintiff on Defendant's behalf," including a $34,607.72 receivable due to Defendant that he assigned to Plaintiff as partial repayment. *Id.* ¶¶ 20, 21. Plaintiff maintains that Defendant still owes her $376,185.00 for her payment of the mortgage, insurance, and property taxes on the Homestead Property. *Id.* ¶ 19.

Since 1990, Defendant and his family have lived in the single-family home on the Homestead Property. *Id.* ¶ 22. Plaintiff originally kept personal property and effects in the separate apartment that she furnished for her private use when she and her family travel to Maryland. *Id.* In or around January of 1999, Defendant removed all of Plaintiff's personal belongings from the separate apartment and rented out the apartment, without Plaintiff's approval or consent. *Id.* ¶ 23. Plaintiff alleges that she learned of the rental in May of 1999, when she and her family planned to visit Maryland, but were unable to stay in the apartment because it had been rented. *Id.* Defendant has not provided Plaintiff with an accounting of the rental income he received from the Homestead Property, and Plaintiff alleges that he has denied her access to the apartment on the Homestead Property for the last 234 months. *Id.* ¶ 24. Plaintiff also alleges that Defendant has damaged the apartment so that it is no longer habitable, with missing kitchen appliances, severe structural damage, and a hole in the roof. *Id.* ¶ 25.

Plaintiff wants to sell the Homestead Property, but Defendant does not. *Id.* ¶ 26. Plaintiff filed this suit on October 28, 2018. ECF 1.

## II. Diversity Jurisdiction

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion to dismiss under Rule 12(b)(1) challenges the court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). To survive a Rule 12(b)(1) motion to dismiss, a complaint must either present a federal question pursuant to 28 U.S.C. § 1331, or establish diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See Choice Hotels Intern., Inc. v. Shiv Hospitality, L.L.C.*, 491 F.3d 171, 175-76 (4th Cir. 2007).

A defendant challenging a complaint under Rule 12(b)(1) may advance a "facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" *Hasley v. Ward Mfg., LLC*, No. RDB-13-1607, 2014 WL 3368050, at *1 (D. Md. July 8, 2014) (alteration in original) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). Under a facial challenge, the Court affords the plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration," and will take the facts alleged in the complaint as true and deny the motion if the complaint alleges sufficient facts to invoke subject matter jurisdiction. *Kerns*, 585 F.3d at 192 (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under a factual challenge, the plaintiff bears the burden of proving the facts supporting subject matter jurisdiction by a preponderance of the evidence. *U.S. ex rel.*

*Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). In that case, the pleadings should be regarded as "mere evidence on the issue," and courts "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (citing *Adams*, 697 F.2d at 1219; *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987)).

While the plaintiff bears the burden of proving that a court has jurisdiction over the claim or controversy at issue, a Rule 12(b)(1) motion should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Trentacosta*, 813 F.2d at 1558).

"When a defendant moves to dismiss a plaintiff's claim for lack of standing, courts commonly address the motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure." *Richardson v. Mayor and City Council of Balt.*, Civil Action No. RDB-13-1924, 2014 WL 60211, at *1 (D. Md. Jan. 7, 2014) (citing *Payne v. Chapel Hill North Properties, LLC*, 947 F. Supp. 2d 567 (M.D.N.C. 2013) ("Generally, challenges to standing are addressed under Rule 12(b)(1) for lack of subject matter jurisdiction.")).

### B. Analysis

In the Motion,[2] Defendant argues that there is not diversity of citizenship between the parties, and that Plaintiff lacks standing to bring her breach of contract claims. ECF 22 at 2-7.

### 1. Diversity Jurisdiction

In her Complaint, Plaintiff asserts that this Court has diversity jurisdiction under 28 U.S.C. § 1332. ECF 1 at 2. Plaintiff alleges that she is a resident of Kentucky, and that Defendant is a

---

[2] *Pro se* pleadings are liberally construed, and held to a less stringent standard than pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *accord Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 722 (4th Cir. 2010).

resident of Maryland. *Id.* Defendant maintains that Plaintiff is a legal resident of Maryland because she "owns residential real estate in the State of Maryland, … pay[s] taxes to Anne Arundel County, Maryland, and the State of Maryland for her property." ECF 22 at 3.

For the purposes of diversity jurisdiction, state citizenship "depends not on residence, but on national citizenship and domicile." *Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 663 (4th Cir. 1998) (citation omitted). A United States citizen is a citizen of the state in which he or she is domiciled, which "requires physical presence, coupled with an intent to make the State a home." *Johnson v. Advance Am., Cash Advance Ctrs. of S.C., Inc.*, 549 F.3d 932, 937 n.2 (4th Cir. 2008) (citing *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S. Ct. 1597, 104 L.E.2d 29 (1989); *Jahed v. Acri*, 468 F.3d 230, 236 (4th Cir. 2006); *Webb v. Nolan*, 484 F.2d 1049, 1051 (4th Cir. 1973)).

Neither party disputes that Defendant is domiciled in Maryland. ECF 1 at 2; ECF 22 at 2-3. While Defendant argues that Plaintiff is a legal resident of Maryland, Plaintiff's ownership of real property and payment of property taxes in Maryland does not automatically make Maryland her domicile for purposes of diversity jurisdiction. Rather, Plaintiff's domicile is determined by her physical presence in a state, and her intent to make that state her home. *See Johnson*, 549 F.3d at 937 n.2. Plaintiff has established by a preponderance of the evidence that she is domiciled in Kentucky. *See U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d at 347 (under a factual challenge, "the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence"). Courts consider various factors to determine whether a party has the requisite presence and intent for a state to be his or her domicile, including the party's "current residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts … place of employment or business; driver's license and other automobile registration;

[and] payment of taxes." *Niell v. Salisbury School, Inc.*, Civil Action No. ELH-11-3627, 2012 WL 43021, at *4 (D. Md. Jan. 5, 2012) (quoting *Garcia Perez v. Santaella*, 264 F.3d 348, 351 (1st Cir. 2004) (internal quotation marks omitted)); *see also* Wright et al., *Fed. Prac. & Proc.* § 3612.

While not conclusive, "declarations of intent by the person whose domicile is in question are given heavy … weight." *Thomas v. Farmer*, 148 F. Supp. 2d 593, 596 (D. Md. 2001) (quoting *Hamilton v. Accu-Trek*, 13 F. Supp. 2d 366, 370 (E.D.N.Y. 1998) (internal quotation marks omitted). When statements of intention are "in conflict with the facts," however, they are "entitled to little weight." *Webb v. Nolan*, 361 F. Supp. 418, 421 (M.D.N.C. 1972), *aff'd per curiam*, 484 F.2d 1049 (4th Cir. 1973), *cert. denied*, 415 U.S. 903, 94 S. Ct. 1397, 39 L. Ed. 2d 461 (1974).

Here, Plaintiff has substantiated her claim with an affidavit reflecting her physical residence and intent to reside in Kentucky. *See* ECF 23-1. Plaintiff states that she has lived in Kentucky since 1979, in a home that she owns with her husband as tenants by the entirety with right of survivorship. ECF 23-1 ¶ 1. She has been registered to vote in local, state, and federal elections in Kentucky since 1978. *Id.* ¶ 3. She represents that she has a valid Kentucky drivers' license that she renewed on April 3, 2018, effective through May, 2022. *Id.* ¶ 4. Her automobile is also registered and titled in Kentucky. *Id.* ¶ 5. She has been employed as a full-time faculty member at Northern Kentucky University since August of 1980. *Id.* ¶ 6. Plaintiff's personal bank account is titled in Kentucky, and she has filed her personal state income tax returns with the Kentucky Department of Revenue since 1978. *Id.* ¶¶ 7, 8. Importantly, Defendant does not offer any factual basis, beyond Plaintiff's property ownership and payment of property taxes, to show that Plaintiff has ever physically resided in or intended to make Maryland her home.

Based on her affidavit and its consistency with other facts in the record, Plaintiff has met her burden to show that she physically resides in Kentucky, and intends for Kentucky to be her

home.  *See, e.g.*, *Ward v. Walker*, 725 F. Supp. 2d 506, 510 (D. Md. 2010) (determining that a party was domiciled in Florida because the record showed he maintained a residence in the state, obtained a Florida's driver license, paid taxes there, and spent more than six months of the year there); *see also Goode v. STS Loan & Management, Inc.*, No. Civ.A. DKC 2004-0999, 2005 WL 106492, at *7 (D. Md. 2005) (finding plaintiff was domiciled in the District of Columbia based on plaintiff's "affidavits and the reasonable inferences that can be drawn therefrom," reflecting plaintiff's stated intent to reside there when the complaint was filed and that she was registered to vote there).  Therefore, the Court finds that the Plaintiff's domicile is Kentucky, establishing diversity of citizenship between the parties.  Accordingly, because the Plaintiff has also alleged damages in excess of $75,000, this Court has subject matter jurisdiction over Plaintiff's claims. *See* 28 U.S.C. § 1332(a); ECF 1 at 2.

### 2.  Standing

Defendant argues that Plaintiff lacks standing to bring her breach of contract claims, but does not challenge Plaintiff's standing as to her other claims.  ECF 22 at 4-7.  Article III of the United States Constitution limits federal jurisdiction to "actual cases or controversies," and the "'irreducible constitutional minimum' of standing consists of three elements."  *Spokeo, Inc. v. Robinson*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  To establish standing, a plaintiff must show (1) an injury in fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  *Lujan*, 504 U.S. at 560-61.  Constitutional standing is governed by Rule 12(b)(1), because it underlies the Court's jurisdiction.  *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005).  At the motion to dismiss stage, the complaint must "clearly …

allege facts demonstrating each element" of standing. *Spokeo*, 126 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Plaintiff has standing to pursue her breach of contract claims against Defendant. Plaintiff alleges that the parties entered into two written contracts on May 23, 1990 and July 23, 1993, wherein Defendant agreed to repay Plaintiff for the mortgage payments she made on his behalf. ECF 1 ¶ 50. Plaintiff has also provided copies of these alleged contracts as exhibits to her Opposition. *See* ECF 23-2. She also alleges that she paid $411,000.00 on Defendant's behalf for the mortgage on the Homestead Property, of which Defendant has failed to repay $376,184.00. ECF 1 ¶ 51. She has further alleged that the parties entered an oral agreement, under which Defendant would pay Plaintiff $40.00 per hour for services rendered to their father's estate. *Id.* ¶ 53. Plaintiff alleges that Defendant has failed to reimburse Plaintiff for this work, in an amount no less than $61,800.17. *Id.* ¶ 55(a).

The basis for Defendant's standing argument is that "there are no facts that can establish the existence of a valid or enforceable contract between the parties." ECF 22 at 6. He also "den[ies] that any verbal offer was made to [him] by the Plaintiff as alleged in the Complaint," and states that he "never received any consideration whatsoever from the Plaintiff's alleged 'agreement' claim in the Complaint." *Id.* Defendant's argument goes to the merits of Plaintiff's breach of contract claims, and not to the sufficiency of her allegations at the motion to dismiss stage of the litigation. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (courts generally do not "resolve contests surrounding the facts, [or] the merits of a claim" through a Rule 12(b)(6) motion) (citation omitted). Accordingly, because Plaintiff has alleged facts demonstrating each element of standing for her breach of contract claims, the Court finds that dismissal is unwarranted.

## III.  Motion to Dismiss

### A.  Legal Standard

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss.  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare

circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court may properly consider documents incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004).

Accordingly, when resolving a Rule 12(b)(6) motion, a court may consider certain exhibits, without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . ." *Goines*, 822 F.3d at 166 (citations omitted); *see also U.S. ex rel.*

*Oberg*, 745 F.3d at 136; *Anand*, 754 F.3d at 198; *Am. Chiropractic Ass'n*, 367 F.3d at 234; *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

### B. Analysis

Defendant argues that Plaintiff's Complaint should be dismissed because her claims are barred either by the applicable statute of limitations, laches, *res judicata*, or collateral estoppel.

ECF 22 at 7-8; ECF 24 at 2. In addition, Defendant contends that Plaintiff's Sale in Lieu of Partition Claim (Count I) is frivolous. *Id.* at 9.

### 1. *Res Judicata* and Collateral Estoppel

Defendant argues that Plaintiff's claims for breach of oral contract and quantum meruit, Counts VIII and X, are barred by collateral estoppel and *res judicata*. ECF 22 at 7-8. He maintains that these causes of action were fully adjudicated in the Orphans' Court for Anne Arundel County, Maryland. *Id.* at 8. *Res judicata*, or claim preclusion, is a judicial doctrine under which "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979). The doctrine preludes parties from "contesting matters that they have had a full and fair opportunity to litigate." *Id.* at 153-54. Collateral estoppel, or issue preclusion, bars "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.'" *Hatley v. Watts*, — F.3d —, 2019 WL 1050650, at *3 (4th Cir. Mar. 6, 2019) (citing *Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008)).

Defendant's argument that Counts VIII and X have been fully adjudicated relies on his assertion that the Orphans' Court for Anne Arundel County in Maryland issued a final decision on the same claims presented here, between the same parties. Plaintiff attached the Orphans' Court decision as an exhibit to her Opposition. ECF 23-4. The Orphans' Court decision pertains to the estate of Caldwell McMillan, Sr., the parties' father, for whom Defendant is the Personal Representative. *Id.* at 1; ECF 1 ¶ 2. Plaintiff concedes that her claim in the Orphans' Court for "Reimbursement of Expenses and Compensation for Services Rendered to the Estate" was granted in the amount of $41,759.74, as reimbursement for the expenses advanced by Plaintiff in

connection with the administration of her father's estate.  ECF 23 at 18; ECF 23-4 at 1-2.

Plaintiff's claims for breach of oral contract and quantum meruit in this Court are based not on

those expenses, but on her provision of services on behalf of Defendant.  ECF 1 ¶¶ 52-55, 60-64.

Under those claims, Plaintiff seeks a total of $80,018.17.  *Id.*

Because the Orphans' Court made no ruling regarding Plaintiff's provision of services,

Defendant's argument appears to invoke the probate exception to federal subject matter

jurisdiction, rather than *res judicata* or collateral estoppel.  Applying the liberal construction

afforded pleadings by *pro se* litigants, the Court will consider the probate exception.  *See Erickson*

*v. Pardus*, 551 U.S. 89, 94 (2007); *accord Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 722 (4th

Cir. 2010).

A federal court "has no jurisdiction to probate a will or administer an estate."  *Markham v.*

*Allen*, 326 U.S. 490, 494, 66 S. Ct. 296, 90 L. Ed. 256 (1946).  The probate exception "applies

when the district court's adjudication would: 1) 'interfere with the probate proceedings;' 2)

'assume general jurisdiction of the probate;' or 3) assert 'control of property in the custody of state

court.'"  *Libonati v. Ransom*, 664 F. Supp. 2d 519, 522 (D. Md. 2009) (quoting *Markham v. Allen*,

326 U.S. at 494).  This exception is of "distinctly limited scope," and "does not bar federal courts

from adjudicating matters outside … [its] … confines, and otherwise within federal court

jurisdiction."  *Markham*, 326 U.S. at 494.  "A federal court may hear claims related to the probate

of a will or the administration of a decedent's estate 'where the final judgment does not undertake

to interfere with the state court's possession save to the extent that the state court is bound by the

judgment to recognize the right adjudicated by the federal court.'"  *Libonati*, 664 F. Supp. 2d at

522 (quoting *Markham*, 326 U.S. at 494).  Moreover, the probate exception prohibits only the

administration of assets, and does not prevent a federal court from determining the rights of the parties. *Id.*

In Maryland, the Orphans' Court is "a tribunal of special limited jurisdiction and can exercise only the authority and power expressly provided to it by law." *Libonati*, 664 F. Supp. 2d at 523 (citing *DeFelice v. Riggs Nat'l Bank of Washington*, 55 Md. App. 476, 478, 462 A.2d 88, (1983)). Maryland's Code provides the jurisdiction of the Orphans' Court:

> (a) The court may conduct judicial probate, direct the conduct of a personal representative, and pass orders which may be required in the course of the administration of an estate of a decedent. It may summon witnesses. The Court may not, under pretext of incidental or constructive authority, exercise any jurisdiction not expressly conferred.

Md. Code Ann., Est. & Trusts § 2-102 (West 2019).

In this case, the probate exception does not apply because there is no danger that this Court will interfere with the proceedings of the Orphans' Court, the Orphans' Court has no jurisdiction to hear the two claims in question before this Court, and this Court will not be asserting control over property within possession of the Orphans' Court. *See Libonati*, 664 F. Supp. 2d at 522-23.

First, the breach of oral contract and quantum meruit claims against Defendant individually are distinct legal claims that will not interfere with the administration of the estate. Plaintiff's claim in the Orphans' Court was for recovery of expenses from her father's estate, not from Defendant himself. ECF 23-4. Defendant's capacity as a personal representative to their father's estate is distinct from his individual capacity as a party in this case. *See* Md. Code Ann., Est. & Trusts §7-101(a) (West 2019) ("A personal representative is a fiduciary. He is under a general duty to settle and distribute the estate of the decedent in accordance with the terms of the will…").

More importantly, Plaintiff's claims in this Court assert not only Defendant's failure to reimburse Plaintiff for services performed for their father's estate, but also Defendant's failure to

reimburse Plaintiff for his share of costs and expenses related to Sylmac, as well as other out-of-pocket expenses Plaintiff allegedly advanced on his behalf. *See* ECF 1 ¶¶ 52-55, 60-64. Count VIII alleges, "the Parties agreed orally to share expenses associated with Sylmac, Inc.," and Defendant agreed "to pay Plaintiff for services rendered to their father's estate at the rate of $40.00 per hour and reimburse her for expenses." *Id.* ¶ 53. Similarly, Count X alleges, "Plaintiff rendered valuable services to the Defendant by performing services including but not limited to accounting, tax preparation, assisting counsel with legal research and document review and preparation, in connection with the development of the Twin Hills subdivision and in connection with aiding the Defendant as the Personal Representative of their father's estate." *Id.* ¶ 61. Accordingly, Plaintiff's claims in this Court for services performed on behalf of Defendant, some of which also relate to their father's estate, are distinct from Plaintiff's claim against their father's estate in probate.

Second, the Orphans' Court does not have jurisdiction over the two claims in question. "As defined in Maryland Rule 5(a), an 'action' includes all the steps by which a party seeks to enforce any right in *a court of law or equity*," and "[p]roceedings brought in the Orphans' Court are therefore not 'actions' in the strict legal sense of the word." *DeFelice*, 55 Md. App. at 479, 462 A.2d at 90. Thus, while Plaintiff's breach of contract and quantum meruit claims may relate tangentially to the parties' father's estate, they do not fall within the Orphans' Court's limited jurisdiction to administer the estate's assets. *See Libonati*, 664 F. Supp. 2d at 522 ("The probate exception does not prevent a federal court from determining the rights of the parties; it prohibits only the administration of assets."); *see also DeFelice*, 55 Md. App. at 479, 462 A.2d at 90 ("Just as an Orphans' Court may not hear an action against a tortfeasor for the decedent's wrongful death,

it may not determine a dispute between the estate and third party over the title to the decedent's personal property.").

Finally, this Court will not be asserting control over property in possession of the Orphans' Court. Plaintiff seeks reimbursement of $80,018.17 from Defendant's individual assets, not from the estate. ECF 1 ¶¶ 55(a), 64(a) ("Plaintiff requests that: the Court enter judgment against the Defendant…"). Accordingly, the reimbursement and expenses sought are not probate assets. *See Libonati*, 664 F. Supp. 2d at 524 (finding that a dispute over the validity of an intervivos transfer of non-probate assets was not a dispute over "the administration of *res* under the control of the probate court"). In sum, the probate exception does not apply to Counts VIII and X, and those claims are properly brought in this Court.

### 2. Statute of Limitations

Defendant argues that Plaintiff's claims are barred by the statute of limitations because she filed them more than three years after they accrued. ECF 22 at 7. Maryland's statute of limitations applies to this case, because the Court is sitting in diversity. *See Harvard v. Perdue Farms, Inc.*, 403 F. Supp. 2d 462, 466 (D. Md. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)) (explaining that a federal court sitting in diversity must apply the choice of law rules of the forum state); *Doughty v. Prettyman*, 219 Md. 83, 88, 148 A.2d 438, 440 (1959) (stating that under Maryland choice of law rules, statutes of limitations are matters of procedural law governed by the law of the forum state). Maryland law establishes a three-year statute of limitations for civil actions, unless another Code provision states otherwise. Md. Code Ann., Cts. & Jud. Proc. § 5-101.

The determination of when an action accrued is ordinarily "left to judicial determination." *Frederick Road Ltd. P'Ship v. Brown & Sturm*, 360 Md. 76, 756 A.2d 963, 973 (2000). That

determination "may be based solely on law, solely on fact, or on a combination of law and fact." *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 635 A.2d 394, 399 (1994). When a factual determination must be made to identify the date of accrual, "those factual determinations are generally made by the trier of fact, and are not decided by the court as a matter of law." *Green v. Pro Football, Inc.*, 31 F. Supp. 3d 714, 722 (D. Md. 2014) (citing *Litz v. Maryland Dep't of Env't*, 434 Md. 623, 76 A.2d 1076, 1086 (2013)). Accordingly, "a motion to dismiss ordinarily should not be granted by a trial court based on the assertion that the cause of action is barred by the statute of limitations unless it is clear from the facts and allegations on the face of the complaint that the statute of limitations has run." *Litz*, 76 A.2d at 1086; *see also Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) ("[I]n the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[] *on the face of the complaint*.'").

### a. Breach of Contract Claims (Counts VII & VIII)

The statute of limitations for breach of contract "generally commences on the date of breach, for that is when the cause of action 'accrues.'" *Goodman*, 494 F.3d at 465. That date "may be extended in Maryland by the 'discovery rule,' which provides that the limitations period does not begin until the plaintiff learned or should have learned of the breach." *Id.* In addition, the statute of limitations "does not extinguish [a] debt; it bars the remedy only." *Jenkins v. Karlton*, 329 Md. 510, 531 (1993); *see also Rudasill Family Charitable Trust v. Adcor Industries*, Civil Case No. 8:16-cv-03193-GLS, 2018 WL 4777584, at *2 (D. Md. Oct. 3, 2018) (applying *Jenkins*).

In Maryland, the doctrine of acknowledgement provides that a party's acknowledgement of a debt removes a statutory bar to recovery. *See Jenkins*, 329 Md. at 531. Such

acknowledgement need not "expressly admit the debt, it need only be consistent with the existence of the debt," and it need not "be an express promise to pay a debt." *Id.* Moreover, an acknowledgement of a debt can also toll limitations and "establish[] the date of the acknowledgement as the date from which the statute will now run." *Id.* "[T]he acknowledgement must be a clear, distinct, and unqualified admission. The evidence of the acknowledgement must also be considered in its entirety, and the creditor cannot accept the admission and reject any qualification that might make the acknowledgement ineffective." *Mayor and Council of Federalsburg v. Allied Contracts, Inc.*, 275 Md. 151, 160-61 (1975) (citations omitted). Finally, oral agreements may also benefit from the doctrine of acknowledgement. *See Zayas v. Adcor Industries, Inc.*, Case No. GJH-16-03193, 2017 WL 4296721, at *5 (D. Md. Sept. 26, 2017) ("[T]he doctrine of acknowledgement applies when a debtor acknowledges 'debts really due,' regardless of those debts being due through a written, oral, or implied in fact contract.").

Plaintiff alleges two breach of contract claims, one based on the two written agreements and the other based on an oral agreement. ECF 1 ¶¶ 49-55. Plaintiff acknowledges that all of the agreements were made outside the three-year limitations period, with the first written agreement on May 23, 1990, the second written agreement on July 23, 1993, and the oral agreement sometime in 1990. ECF 23 at 12; ECF 1 ¶¶ 50, 53. However, Plaintiff maintains that the Complaint alleges Defendant's "sporadic payments to Plaintiff between 1999 and 2017 towards: (1) Sylmac, Inc's expenses paid by Plaintiff; (2) services rendered by Plaintiff to Sylmac, Inc. or their father's estate; and (3) mortgage payments and carrying charges paid by Plaintiff on Defendant's behalf for the Property." ECF 23 at 12 (citing ECF 1 ¶ 20). Plaintiff argues that Defendant's alleged payments through 2017 are acknowledgements of Defendant's debts, and serve to toll the limitations period. *Id.*

The Court cannot identify, from the face of the Complaint, the exact date of accrual for Plaintiff's breach of contract actions, because Plaintiff only alleges that she received sporadic payments from Defendant through 2017. ECF 1 ¶ 20. In her Opposition, Plaintiff relies on the July 23, 1993 agreement, which provides, "[t]hose loaned amounts and the original mortgage are agreed to be repaid as soon as the inheritance funds are available from the Estates." ECF 23-2 at 4; ECF 23 at 13-14. Plaintiff argues that "there can be no actual breach (and the cause of action does not accrue) until the Orphans' Court for Anne Arundel County, Maryland fixes the amount of inheritance that is to be distributed to Plaintiff and Defendant in either or both of their parents' estates." ECF 23 at 13-14. Plaintiff states that there has been "no final accounting in either of the Parties' parents' estates so the condition precedent to Defendant's duty to pay remains unsatisfied and consequently there has been no actual breach of the Contract," and argues instead that Defendant's "definite and unequivocal refusal to perform" constitutes an anticipatory breach. *Id.* at 14.

Importantly, Plaintiff does not allege anticipatory breach in her Complaint, nor does she allege any facts regarding Defendant's testimony in front of the Orphans' Court, which she now argues is the basis for anticipatory breach claims. *Id* at 14-15; *see* ECF 1 ¶¶ 49-55 (alleging "Defendant's failure to repay Plaintiff constitutes a breach of the Parties' express agreement," and "Defendant's failure to repay Plaintiff constitutes a breach of the Parties' oral contract"). Plaintiff is "bound by the allegations contained in [her] complaint and cannot, through the use of motion briefs, amend the complaint." *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998). However, the Court will not dismiss Plaintiff's breach of contract claims, at this early stage of the litigation, because it is not clear from the facts and allegations on the face of the Complaint that the statute of limitations has run. *See Goodman*, 494

F.3d at 464 (concluding "that the face of the complaint does not allege facts sufficiently clear to conclude that the statute of limitations had run, and the district court therefore erred in dismissing the complaint on that basis under Rule 12(b)(6)"); *Litz*, 76 A.2d at 1086.  Accordingly, Defendant's motion to dismiss Counts VII and VIII is denied.

### b. Quantum Meruit (Count X)

Plaintiff alleges a claim of quantum meruit against Defendant based on the parties' oral agreement in or around 1990, under which she alleges she performed valuable services for Defendant who was "fully aware that Plaintiff was providing these services and received the benefit of the services knowing that Plaintiff expected to be paid for her work."  ECF 1 ¶¶ 60-64 This claim relies on the same facts relevant to Plaintiff's breach of oral contract claim. *Id.* ¶¶ 53-55 (alleging Defendant breached the oral contract by "refusing to reimburse Plaintiff for the reasonable value" of the services Plaintiff performed for Defendant).   Accordingly, this claim is not barred by the statute of limitations, for the same reasons Plaintiff's breach of oral contract claim is not barred by the statute of limitations.

In addition, Plaintiff may plead both a breach of contract claim and a quantum meruit claim as alternate theories of liability.  *See United States for use and benefit of Tusco, Inc. v. Clark Construction Group, LLC*, 235 F. Supp. 3d 745, 755 (D. Md. 2016).  "In Maryland, 'generally, quasi-contract claims such as quantum meruit and unjust enrichment cannot be asserted when an express contract defining the rights and remedies of the parties exists.'"  *Id.* (quoting *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 747 A.2d 600, 610 (2000)) (footnote omitted).  However, "[p]arties may plead alternative theories of liability, indeed as many theories as the facts will fit."  *Swedish Civil Aviation Admin. v. Project Mgmt. Enterprises, Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002) (internal citations and quotations omitted).  Where, as

here, the nature of the alleged contract is itself in dispute, Plaintiff may be able recover on a quantum meruit theory, rather than on a breach of contract theory. *See Tusco Inc.*, 235 F. Supp. 3d at 755 (denying motion to dismiss quantum meruit claim in addition to breach of contract claim, because the nature of the contract itself was in dispute). Thus, Defendant's motion to dismiss Count X is denied.

### c. Sale in Lieu of Partition Claim (Count I)

Plaintiff seeks a "Sale in Lieu of Partition" of the Homestead Property. ECF 1 ¶¶ 27-29. Maryland law provides that if a "property cannot be divided without loss or injury to the parties interested, the court may decree its sale and divide the money resulting from the sale among the parties according to their respective rights." Md. Code Ann., Real Prop. § 14-107(a) (West 2019). Maryland law has established that there is no statute of limitations for partition actions. *See Maskell v. Hill*, 189 Md. 327, 336, 55 A.2d 842, 846 (1947) ("A co-owner is under no obligation to file a bill for partition unless or until she sees fit."). Thus, this Count is not barred by the statute of limitations.

In addition to his statute of limitations argument, Defendant argues that Count I is frivolous, and Plaintiff "has presented no evidence whatsoever that the Home Stead Property cannot be divided without loss or injuries to either party." ECF 22 at 9. Defendant cites Maryland Rule 12-401, which provides, "the court shall order a sale only if it determines that the property cannot be divided without loss or injury to the parties interested." Md. Rules, Real Prop. Actions, Rule 12-401(b)(1) (West 2019). The relevant Maryland statute governing Plaintiff's claim, however, is Md. Code Ann., Real Prop. § 14-107(a), which similarly provides, "[i]f it appears that the property cannot be divided without loss or injury to the parties interested, the court may decree

its sale and divide the money resulting from the sale among the parties according to their respective rights."

Defendant's argument that the property can be divided without loss or injury to either party goes to the merits of Plaintiff's partition claim, and not to the sufficiency of Plaintiff's allegations at the motion to dismiss stage. Ultimately, to succeed in a sale in lieu of partition action, "the criterion is not whether there was a 'possibility' that the tract could be partitioned in kind without loss or injury, but whether upon the basis of a preponderance of the evidence it appears that the property could not be divided without loss or injury to the parties [sic] interest." *Boyd v. Boyd*, 32 Md. App. 411, 419, 361 A.2d 146, 151 (1976). This action is "equitable in nature so that the [court] is accorded broad discretionary authority." *Maas v. Lucas*, 29 Md. App. 521, 525, 349 A.2d 655, 657 (1975). Thus, whether the property can be divided without loss or injury to the parties' rights "is for the court to determine." *Boyd*, 32 Md. App. at 416.

Plaintiff has alleged that the Homestead Property, a single-family home where Defendant has resided for nearly 29 years, is "indivisible without loss or injury to the Parties." ECF 1 ¶¶ 10, 22, 27-29. Plaintiff proffers several facts that support her sale in lieu of partition claim: Defendant resides in the single-family home with his family and has failed to pay his share of the mortgage; for at least 234 months, Defendant has denied Plaintiff access to the apartment, specifically reserved for her private use on the Homestead Property; and Defendant has caused damage to the apartment so that it is no longer habitable. ECF 1 ¶¶ 19, 22-24. Contrary to Defendant's belief, Plaintiff is not required to present any evidence at this stage in the litigation to prove her claim. *See* Fed. R. Civ. P. 8(a)(2) (providing that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a plaintiff need not include "detailed factual allegations" in order to satisfy Rule

8(a)(2)). Accordingly, the Court is satisfied that Plaintiff has adequately pled a claim for a Sale in Lieu of Partition. *See, e.g.*, *Hirshauer v. AQ Holdings, LLC*, No. 1221, Sept. Term, 2017, 2018 WL 6437671, at *11 (Md. Ct. Spec. App. Dec. 7, 2018) (affirming circuit court's decision ordering property sold rather than partitioned because court found that plaintiff "would likely hinder any expeditious partition process 'given the continued obstruction that [plaintiff] has engaged in'" and "the court also considered the sentimental value of the Property"). Defendant's motion to dismiss Count I is denied.

### d. Accounting/Sharing of Profits Claims (Counts II & III)

Plaintiff's claims for an accounting and sharing of profits under both Maryland's Code and common law are barred by the statute of limitations, because it is clear from the face of the Complaint that Plaintiff's claims accrued in May of 1999 when Plaintiff alleges "she informed Defendant she and her family were coming to visit and he told her that the apartment was rented out and she could not use it." ECF 1 ¶ 23. While Plaintiff alleges that Defendant never provided her with an accounting of the rental income he received from the Homestead Property, Plaintiff does not allege that she ever demanded an accounting from Defendant. *Id.* ¶ 24.

Plaintiff argues that dismissal is premature because she needs additional discovery to determine when these causes of action accrued. ECF 23 at 15. Specifically, Plaintiff seeks to learn "when [Defendant] started and stopped renting the Property and the amount of revenue he earned from the renting of the Property." *Id.* Discovering those facts, however, would not change Plaintiff's own allegation in the Complaint that she learned of Defendant's rental in May of 1999. ECF 1 ¶ 23. Based on Maryland's discovery rule, whereby an action accrues when "a plaintiff in fact knows or reasonably should know of the wrong," Plaintiff's claims for accounting and sharing of profits accrued in 1999 when she learned of Defendant's renting the Homestead Property. *See*

*Hecht v. Resolution Trust Corp.*, 333 Md. 324, 334 (1994) (citing *Poffenberger v. Risser*, 290 Md. 631, 636 (1981)). Indeed, the *Miller* case that Plaintiff relies on for several of her other claims clarified that when a plaintiff's claim is for "rents and profits received by the co-tenant in possession as to the receipt of which the other co-tenant should have been aware … the untimely attempt to recover her share was properly barred by limitations." *Miller v. Miller*, 519 A.2d 1298, 1311 (Md. Ct. Spec. App. 1987) (distinguishing *Maskell v. Hill*, 189 Md. 327, 55 A.2d 842 (1947)). Accordingly, Counts II and III, filed well after the statute of limitations ran in 2002, are barred, and Defendant's motion to dismiss Counts II and III is granted.

### e. Contribution, Equitable Lien, Unjust Enrichment, Ouster, and Waste (Counts IV – VI, IX, & XI)

Plaintiff asserts claims of contribution, equitable lien, unjust enrichment, ouster, and waste for Defendant's failure to fulfill his obligations as a tenant in common of the Homestead Property. ECF 1 ¶¶ 38-48, 56-59, 65-70. Plaintiff argues that these claims are not barred by the statute of limitations because they are incidental to her partition claim. ECF 23 at 13. In *Miller*, the Maryland Court of Special Appeals noted, "[i]f the suit is one for partition, the right to which is not barred by limitations, incidental relief by accounting between the parties may be available even as to claims which might be barred if asserted in an independent action." 70 Md. App. at 25, 519 A.2d at 1310 (quoting 20 Am. Jur. 2d, Co-tenancy and Joint Ownership § 105). There, the Court found that a party's claim for "contribution as an offset to the [other party's] claim to one-half of the proceeds of the partition sale" was "incidental to the partition suit as to which there is no statute of limitations." 70 Md. App. at 26, 519 A.2d at 1311.

Here, Plaintiff's contribution, equitable lien, and unjust enrichment claims all relate to her partition action, as they bear on the accounting between the parties in the event of a partition sale. As to contribution, Plaintiff alleges she "is entitled to contribution from Defendant for liens and

encumbrances secured by the Homestead Property which Plaintiff paid," and "[d]ue to Defendant's failure to pay half of the costs and necessary expenses of the Property, the Plaintiff is entitled to reimbursement from Defendant for one-half of all expenses she has incurred from January 1 1990 to the present." ECF 1 ¶¶ 39, 42. As to equitable lien, Plaintiff alleges she has an equitable lien against Defendant's fee simple interest arising from "payments including but not limited to mortgage payments, property taxes, and insurance, that Plaintiff paid in connection with the Homestead Property and for which Defendant never reimbursed her for his share of these common obligations." *Id.* ¶¶ 44, 45. As to unjust enrichment, Plaintiff alleges that Defendant's "acceptance and retention of his one-half interest in the Property" and his residence on the Property for over 28 years while only making "nominal contributions toward the mortgage payments, real estate taxes and insurance upon which the Defendant is jointly and severally liable make it inequitable for Defendant to retain those benefits without repaying Plaintiff their value." *Id.* ¶ 59.

Even considering these claims independently from Plaintiff's partition action, it is not clear from the face of the Complaint when these claims accrued, for the same reasons it is not clear when Plaintiff's breach of contract claims accrued. Accordingly, Defendant's motion to dismiss Counts IV, V, and IX is denied.

Similarly, Plaintiff's waste claim brought under Maryland's Real Property Code is not barred by the statute of limitations, because the Complaint does not establish when Plaintiff learned of the alleged damage to the Homestead Property. *See* ECF 1 ¶¶ 46-48. Plaintiff alleges only that the apartment is no longer habitable, with kitchen appliances missing, severe structural damage, and a hole in the roof, and that such damage has substantially reduced the value of the Homestead Property. *Id.* ¶¶ 25, 48. Without any date specified as to when Plaintiff learned or should have learned of the alleged damage to the property, the Court will not dismiss the waste claim on

limitations grounds. *See Goodman*, 494 F.3d at 464 (concluding "that the face of the complaint does not allege facts sufficiently clear to conclude that the statute of limitations had run, and the district court therefore erred in dismissing the complaint on that basis under Rule 12(b)(6)"); *Litz*, 76 A.2d at 1086. Accordingly, Defendant's motion to dismiss Count VI is denied.

Finally, Plaintiff's ouster claim also is not barred by the statute of limitations, because it is not clear when the claim accrued. "In the context of co-tenancy, the Court of Special Appeals has defined ouster as: 'a notorious and unequivocal act by which one cotenant deprives another of the right to the common and equal possession of the property.'" *White v. Pines Community Improvement Ass'n, Inc.*, 403 Md. 13, 35, 939 A.2d 165, 178 (2008) (quoting *Young v. Young*, 37 Md. App. 211, 221, 376 A.2d 1151, 1158 (1977)). And, "any act or conduct signifying his intention to hold, occupy and enjoy the premises exclusively, and of which the tenant out of possession has knowledge, or of which he has sufficient information to put him upon inquiry, amounts to an ouster of such [a co-]tenant." *Id.* (quoting *Sowers v. Keedy*, 135 Md. 448, 451, 109 A. 143, 144 (1919)).

Here, Plaintiff alleges that in or about February of 1999, "Defendant prevented her from having use of the Homestead Property by removing her personal effects from the apartment and renting it out." ECF 1 ¶ 68. Plaintiff also alleges that she has been unable to use the property since 1998, because the apartment was rented and because Defendant has since caused damage to it, making it uninhabitable. *Id.* ¶ 70. While Plaintiff alleges that "Defendant's actions were unequivocal and notorious," it is not entirely clear whether Plaintiff refers only to Defendant's actions in February of 1999, or to any recent actions of Defendant that may have caused her ouster claim to accrue. *See id.* ¶ 69. At this stage in the litigation, then, Defendant's motion to dismiss Count XI is denied.

### 3. Laches

In his Reply, Defendant argues that Plaintiff's claims are also barred by the doctrine of laches. ECF 24 at 2. Specifically, he states that "Plaintiff is 20+ years too late," and that no "reasonable person can defend against allegations that took place well over 20 years in the past." *Id.* The doctrine of laches is an affirmative defense to equitable claims, allowable under Federal Rule of Civil Procedure 8(c). *See White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990). The defendant bears "the ultimate burden of proving '(1) lack of diligence by the party against whom the defense is asserted, and (2) the prejudice to the party asserting the defense.'" *Id.* (quoting *Costello v. United States*, 365 U.S. 265, 282, 81 S. Ct. 534, 543, 5 L. Ed. 2d 551 (1961)).

The first element, lack of diligence, "exists where 'the plaintiff delayed inexcusably or unreasonably in filing suit.'" *Id.* (quoting *National Wildlife Federation v. Burford*, 835 F.2d 305, 318 (D.C. Cir. 1987)). "An inexcusable or unreasonable delay may occur only after the plaintiff discovers or with reasonable diligence could have discovered the facts giving rise to his cause of action." *Id.* To show a plaintiff's lack of diligence, defendant may offer proof that the action was not filed within the applicable statute of limitations "or by facts otherwise indicating a lack of vigilance." *Id.* (citing *Giddens v. Isbrandtsen Co.*, 355 F.2d 125, 128 (4th Cir. 1966)). The second element, prejudice to the defendant, "is demonstrated by a disadvantage on the part of the defendant in asserting or establishing a claim right or some other harm caused by detrimental reliance on the plaintiff's conduct." *Id.* (citing *Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 844 (D.C. Cir. 1982)). The defendant "is aided by the inference of prejudice warranted by the plaintiff's delay." *Giddens*, 355 F.2d at 128.

Beyond stating that Plaintiff's allegations occurred twenty years ago, Defendant has not offered any facts to support his claim that Plaintiff delayed inexcusably or unreasonably in filing

her suit. *See* ECF 24 at 2. As discussed above, the statute of limitations bars only Counts II and III, because Plaintiff specifically alleges her knowledge of Defendant's renting the property in 1999, thereby accruing her claims for accounting and sharing of profits. However, the statute of limitations does not bar her remaining claims, because the Complaint does not establish when those claims accrued. Moreover, Defendant does not offer any "facts otherwise indicating a lack of vigilance" by Plaintiff. Indeed, Plaintiff alleges that she received "sporadic payments" from Defendant until 2017, which, if taken as true, explains the filing of this suit in 2018. *See* ECF 1 ¶ 20.

In addition, Defendant does not suggest that he has been prejudiced in any way by Plaintiff's alleged delay of twenty years. To be sure, "the greater the delay, the less the prejudice required to show laches, and vice versa," and Defendant "may either rest on the inference alone or introduce additional evidence." *White*, 909 F.2d at 102 (quoting *Giddens*, 355 F.2d at 128). Still, Defendant "is ultimately required to prove prejudice." *Id.* The Court is unable to determine, at this early stage, that Defendant has been prejudiced by the alleged delay in Plaintiff bringing this action. To the contrary, the facts alleged in the Complaint suggest that Defendant may have benefitted from Plaintiff's paying the mortgage and expenses on the Homestead Property, where he has resided with his family for nearly thirty years. *See* ECF 1 ¶¶ 14 ("In order to preserve the Homestead Property and prevent foreclosure, Plaintiff made mortgage payments on Defendant's behalf."), 22 ("At all times relevant to this Complaint, the Defendant and his family have occupied the main dwelling house situated on the Homestead Property…"). Defendant may, of course, continue to pursue the affirmative defense of laches as the litigation proceeds.

## IV.    Conclusion

For the reasons set forth above, I shall grant in part and deny in part Defendant's Motion to Dismiss, ECF 22.  A separate Order follows.

Dated: June 19, 2019                                         _____/s/_____

Stephanie A. Gallagher
United States Magistrate Judge