# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

ELIZABETH MCMILLAN-MCCARTNEY,

        Plaintiff,

        v.        Civil Action No. **1:18-cv-03331**

CALDWELL MCMILLAN, JR.,

        Defendant.

## DEFENDANT'S MOTION TO DISQUALIFY OPPOSING COUNSEL

COMES THIS DAY, Defendant Caldwell McMillian, Jr, proceeding *pro se*, who hereby moves this Court to enter an order disqualifying Attorney Mr. Andrew G. Balashov, Esq., Ms. Suvita Chiman Melehy, Esq., or any attorney from Melehy And Associates LLC, from Plaintiff Elizabeth McMillan McCartney in this action in the best interests of justice. In Support of this Motion Mr. McMillan Respectfully represents as follows:

## STANDARD OF REIVEW

Courts "must recognize a presumption in favor" of a defendant's choice of counsel, *Wheat,* 486 U.S. at 164, 108 S. Ct. 1692, and should not interfere with that relationship unless the specific circumstances of the representation in a case demand the court's attention to the potential impropriety of that representation. *See United States v. Collins,* 920 F.2d 619, 625 (10th Cir. 1990) ("When a court unreasonably or arbitrarily interferes with an accused [sic] right to retain counsel of his choice, a conviction attained under such circumstances cannot stand, irrespective of whether the defendant has been prejudiced") (citations omitted). For example, a defendant's choice of counsel and the Sixth Amendment presumption in favor of that choice can be "overcome by not

NOTE:

The following section "Facts " is taken from the PERSONAL REPRESENTATIVE'S MOTION TO VACATE THIS COURTS DECISION ENTERED DEC. 14TH 2017 DUE TO FRAUD UPON THE COURT filed in the Orphans Court of Anne Arundel County MD on March 9,2020, which was likewise filed as a complaint with the Attorney Grievance Commission of Maryland on March 10, 2020.

only a demonstration of actual conflict, but by a showing of a potential serious conflict." *Wheat,* 486 U.S. at 164, 108 S. Ct. 1692. In addition, the right to counsel is "secondary in importance to the Court's duty to maintain the highest standards of professional conduct to insure and preserve trust in the integrity of the bar." *In re Asbestos Cases,* 514 F. Supp. 914, 925 (E.D.Va.1981); *see also United States v. Howard,* 115 F.3d 1151, 1155 (4th Cir.1997); *United States v. Williams,* 81 F.3d 1321, 1324 (4th Cir. 1996); *United States v. Scott,* 980 F. Supp. 165, 167 (E.D.Va.1997); *Tessier v. Plastic Surgery Specialists, Inc.,* 731 F. Supp. 724, 729 (E.D.Va.1990).

"Federal Courts have an independent interest in ensuring that [civil litigation is] conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat,* 486 U.S. at 160, 108 S. Ct. 1692; *see also Williams,* 81 F.3d at 1324; *Scott,* 980 F. Supp. at 167.

## FACTS

### Count One: Fraud upon the Court

On October 31st, 2017, a hearing was held in the Orphans' Court of Anne Arundel County, Maryland for the estate of Caldwell McMillan, Senior, estate number 24984. Presiding were Chief Judge Nancy Phelps, Associate Judge Maureen Carr-York and Associate Judge Alan Rzepowski.

Being on that date heard was an exception to the petition for allowance of personal representative commission Caldwell McMillan, Jr. the personal representative. This exception was submitted and argued by Attorney Ms. Suvita Chiman Mehely, Esq. for her client Elizabeth McMillan McCartney.

Ms. Mehely is a member of the Maryland State Bar Associate in good standing, and duly admitted to practice law before this Court as an Officer thereof.

On or about the 27th day of February 2020 Personal Representative McMillan received the attached signed certification letter from Alec Wetherington, Account Executive with Verbal Ink, who transcribed the results of the October 31st, 2017 proceedings at issue relevant to the instant Motion.

Attached as an Exhibit is a true and complete copy of the excerpts relevant hereto of the October 31st, 2017 hearing in the Orphans' Court of Anne Arundel County for the estate of Caldwell McMillan, Senior, estate number 24984 presided over by Chief Judge Nancy Phelps, Associate Judge Maureen Carr-York and Associate Judge Alan Rzepowski.

Plaintiff's Exhibit is a true and complete, verbatim recollection of the representations of fact that Attorney Ms. Suvita Chiman Mehely, Esq. made to this Court, as issue in this Motion for Vacate.

In summary, Attorney Mehely knowing and intentionally represented to this most honorable Court as an officer thereof, that Personal Representative McMillan, in or around May of 1990, received $69,570.00 that was connected to a mortgage from the estate of Caldwell McMillan Sr, and that this transaction is reflected in the first administrative accounting for Caldwell McMillan Sr. This representation was false.

Attorney Mehely's afore-mentioned representation to the Court was false.

Attorney Mehely's false afore-mentioned representation to the Court was material to her unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense because if she could convince this Court that Personal Representative McMillan had in fact receive a $69,570.00 from the estate of Caldwell McMillan Sr., then this Court would hold that Personal Representative McMillan had already been

paid and exceeded any and all of the Personal Representative fees that he was entitled by law as Personal Representative of the Caldwell McMillan Sr. Estate, when Mr. McMillan was in fact entitled to $43,784.42 in Personal Representative fees in compliance with the guideline of Maryland Estates and Trusts #7-601. The commission is calculated using the gross value of the assets based on the First Administration Account ($1,186,234.00).

Attorney Mehely's false afore-mentioned representation to the Court was made with knowledge of its falsity or ignorance of its truth.

Attorney Mehely is the Resident Agent for the Estate of Sylvia McMillan and also the attorney for Elizabeth McMillan-McCartney, who is Personal Representative the Estate of Sylvia Ross McMillian, Orphans' Court for Anne Arundel County Estate No. 24,437.

Attorney Mehely knowingly strenuously asserted to the Court during the October 31st, 2017 hearing that according to her, Personal Representative Caldwell McMillan Jr., according to the *First Administration Account* previously filed in this Court on February 27th, 1992, a true copy of which is attached hereto as an Exhibit, received a payment from the Caldwell McMillan Sr. Estate in the amount of $69,570.00 when in fact she and her client knew that the parcel of land referenced within the *First Administration Account* was never a part of the Caldwell McMillan Sr. Estate.

Personal Representative Caldwell McMillan Jr., can prove this with clear and convincing evidenced because he *First Administration Account* that Attorney Mehely relied upon, when making her knowing false representations to the Court were from the First Administration Account filed in the Estate of Sylvia Ross McMillian, Orphans' Court for Anne Arundel County Estate No. 24,437. *Id.* at page 2.

Attorney Mehely representation of fact to this Court that the $69,570.00 Personal Representative Caldwell McMillan received was from a mortgage that was allegedly taken out on

the relevant property, and that Personal Representative Caldwell McMillan received the same as a cash payment, when the 1992 *Administration Account* from the Estate of Sylvia Ross McMillian, clearly and plainly states that the $180.000.00 is nothing more than an "Appraisal of Property" which was done for tax purposes.

Attorney Mehely cannot provide this Court with any admissible evidence whatsoever to contradict this clear and convincing fraud committed upon this Court that Attorney Mehely perpetrated.

Attorney Mehely, acting at the direction of her client Elizabeth McMillan-McCartney, presented to the Court that Personal Representative Caldwell McMillan Jr. had in fact receives a $69,570.00 from the Estate of Caldwell McMillan Sr., with the intent that this Court would base it's ruling on her representation of fact to it, and the $69,570.00 would remain in the Estate of Caldwell McMillan Sr., which had remained open for well over 20 years now, which was the manner reasonably contemplated by Attorney Mehely.

There was never a mortgage taken out of the property whatsoever, contrary to clear and unambiguous representations of fact Attorney Mehely made to this Court.

The Court was ignorance of the falsity of the fraudulent representations made to it by Attorney Mehely.

Relying on the false representations made to it by Attorney Mehely clearly set forth in the attached transcripts of the proceedings, the Court upheld Elizabeth McMillan-McCartney's exceptions to Personal Representative Caldwell McMillan Jr.'s Petition for Personal Representative Commission as set forth in the Court's Record of the above-styled case.

Whereas Attorney Mehely is a duly licensed lawyer authorized to practice law before this Court, the Court had a right to rely on Attorney Mehely's knowingly false misrepresentations as true and accurate.

As a direct and proximate cause of Attorney Mehely's knowingly false misrepresentations to this Court, it relied upon them as true and unknowingly entered a Decision, filed on December 14th, 2017, on denying Personal Representative Caldwell McMillan Jr.'s Petition for Personal Representative Commission that was contrary to the law, inconsistent with the facts, which lacks any admissible evidence to support it.

Though Attorney Mehely has assured this Court on more than one occasion that she would provide it with evidence to support his fraudulent assertions as set forth in the attached transcript, Attorney Mehely has heretofore failed to do so because she cannot, because her representations were tantamount to fraud upon this Court.

But for the fraud perpetrated upon this Court by Attorney Mehely there is a reasonable probability that this Court would have entered a Decision granting Representative Caldwell McMillan Jr.'s Petition for Personal Representative Commission whereby he would have received the $43,784.42 in Personal Representative fees to which he is lawfully entitled to in compliance with the guideline of Maryland Estates and Trusts #7-601. The commission is calculated using the gross value of the assets based on the First Administration Account ($1,186,234.00).

At all times relevant hereto, Mr. McMillan acted with ordinary diligence and in good faith upon a meritorious cause of action or defense.

## Count Two: Fraud Upon the Court

The Estates of Caldwell and Sylvia McMillan owned a corporation Sylmac ,Inc. In 1990, adverse circumstances occurred which required them to transfer their real estate assets into Sylmac and file for Chapter 11 bankruptcy. The two estates were 50/50 shareholders.

At the same October 31st, 2017 hearing and as part of her argument that Mr. McMillan should not receive personal representative commissions, Ms. Melehy introduced a letter from Alan Grochal to Elizabeth McMillan-McCartney into evidence, a copy of which is attached hereto as an Exhibit. Mr Grochal, counsel for Sylmac Inc., said that the unsecured creditors needed to be paid. Attached to the letter was the *Amended Schedule A-3 of Unsecured Creditors* from the Bankruptcy Court. Mr. McMillan's claim was rightfully listed on that schedule as due $34, 607.72 for cash advances.

Because the wording of his claim's description stated "cash advances" rather than money loaned , Attorney Melehy hypnotized the judges into believing that Mr. McMillan's claim wasn't a receivable but a cash advance/draw that he had gotten from the Estate of Caldwell McMillan Sr., through Sylmac and had to be paid back. The judges believed her, especially Chief Judge Nancy Phelps.

### Excerpts from the Transcript

*Female: (Atty. Mehely)*    Okay, all right. So now take a look at the last page of that exhibit number one. If you take a look, there is – this document is titled, "Creditors Having Unsecured Claims without Priority." Take a look at the very last claim that's listed over there. Okay, your sister earlier testified that you had made approximately $34,000.00 claim in the bankruptcy estate, and here do you remember that claim that you made for $34,607.72?

*Male: (Mr.McMillan))*    Yeah.

*Female: (Atty. Mehely)*    Yes, you made that claim?

*Male: (Mr.McMillan))*    Mm-hmm.

*Female: (Atty. Mehely)*    In the bankruptcy estate?

| | |
|---|---|
| *Male: (Mr.McMillan))* | Well, yeah. |
| *Female: (Atty. Mehely)* | And here, look at the purpose of the claim. It is for cash advance. |
| *Female: (Atty. Mehely).* | ...... As this court already pointed out, Mr. McMillan has already received in a 24 - $49,140.00 more than Miss McCartney from the outset, you know, as of the first account. So the difference, basically – the difference, if you divide that number in two, the 25, which is $24,570.00, that amount needs to go to Miss McCartney right away in order to basically put them on equal footing with respect to the distributions that would have already been made as of the – according to the account. And then you have the added problem of the $34,000.00 cash advance that Mr. McMillan already received in the bankruptcy court, which as personal representative, he should have – he is required, as a fiduciary, to inform the court of any monies that he received on – in connection with this estate. He did not do that. |
| *Female: (Judge Phelps)* | Thank you. You can't talk right now. |
| *Female: (Atty. Mehely)* | He failed to do that, and that also has to be taken into account. There are two ways the court could look at it. One is that the $34,000.00 should be split between the two estates and being treated as, again, advances from – half from Sylvia's estate and half from – because this was paid out of the bankruptcy court. |
| *Female:* (judge Carr-York) | So you're talking about the $34,000.00? |
| *Female: (Atty. Mehely)* | Correct. |
| *Female:* (judge Carr-York) | I thought that was all to compensate for amounts that Mr. McMillan had claimed? |
| *Male: (Mr. McMillan)* | That I had loaned . |
| *Female: (Atty. Mehely)* | He said that I was not clear as to whether he had loaned it to – it's not clear from the record, and I don't think anybody knows if it's a loan. |
| *Female: (Judge Phelps)* | That was the cash advance, wasn't it? |
| *Female:* | Well, I'm not sure. |
| *Male:* | No. |
| *Female: (Judge Phelps)* | That's what it says on the paper that I looked at. |
| *Female: (Atty. Mehely)* | Exactly. That's what it says on the paper. Miss McMillan McCartney testified that it could have been for monies that he paid. He did not refute it. At the end, he basically said that was for him as a cash advance, right? So — |
| *Female: (Judge Phelps)* | Well, the paper said that I – that's what I saw. |

---

| | |
|---|---|
| *Male:* | _____ _____ _____ . |
| *Female: (Atty. Mehely)* | He acknowledged, but – |

| | |
|---|---|
| *Male:* | Please. |
| *Female: (Judge Phelps)* | But yeah, but he did acknowledge it. |
| *Female: (Atty. Mehely)* | He did acknowledge it. |

*Female: (Atty. Mehely)*   You're right. But the question is, what cash advance from which estate, and how? So what the bankruptcy court had been handling, how it had been handling it was splitting it between the two. So there are two ways of looking at it. Either the entire $34,000.00 came – was a cash advance to him from Caldwell's estate, or half of it is from Caldwell's estate, and half of it is from Sylvia's estate. So if you look at it sort of in the way that it's most – if you took half, you know, as sort of the position that is probably most favorable to Mr. McMillan, you still are now left with not a whole lot of money in the estate. He says it's $82,000.00. You take out about $17,000.00, another $25,000.00, you reduce those _____.

*Female: (Atty. Mehely)*   And then you take the $34,000.00.

*Male:*   Got it.

*Female: (Atty. Mehely)*   And $34,000.00 – what is it? Oh, my gosh.

*Female:*   _____ _____ _____.

*Female: (Atty. Mehely)*   $34,607.72, and if we were splitting everything down the middle, it might make sense to just split that in two. Put one in one estate, and another in the other estate, or I think because of the way that this started, it would make the most sense.

*Male:* ( Mr. McMillan)   Excuse me, Your Honor?

*Female:* (Judge Carr-York)   Yes, sir, Mr. McMillan?

*Male:* ( Mr. McMillan)   Can I just say one – a couple of things about it, because this was still on the attorney's fees issue. There's a couple of things that's ____ about it.

*Female:*   Okay.

Male ( Mr. McMillan) – this wasn't a cash advance. I don't know why she wrote it – she's the treasurer – as a cash advance. I didn't get the money. When I got that initial loan, I spent about this amount in lawyers to pay –

*Female: (Judge Phelps)*   I'm not gonna stop you, but we have to go by what's on the paper, and the paper indicated – the legal document said cash advance.

Female (judge Carr-York) - " if you have additional monies that you personally wrote checks for, or that you used that $34,000.00 for that actually benefited the estate, actually produced something. If you paid an attorney's fee with it, or something else, and were not reimbursed, anything that you were not reimbursed for, then you can submit it for consideration if you have additional monies that you personally wrote checks for, or that you used that $34,000.00 for that actually benefited the estate, actually produced something. If you paid an attorney's fee with it, or something else, and were

not reimbursed, anything that you were not reimbursed for, then you can submit it for consideration.

The letter from Sylmac's Bankruptcy Counsel. and the attached schedule of unsecured creditors clearly identifies Mr. McMillan as a creditor not a debtor.

The Orphans' Court Judges relied on the attorney's representation to make the December 14, 2017 decision to award Mr. McMillan $00.00 out of a possible $43,000 for his 27 years as personal representative for his father's Estate.

Ms. Mehely is fluent in English. There is no ambiguity in the letter from Bankruptcy Counsel nor in the *Schedule of Unsecured Creditors*. The word "advance" is synonymous with loan.

Sitting at the table with Ms. Melehy was her client, Elizabeth McMillan-McCartney who as President/Treasurer of Sylmac drafted the Schedule of Unsecured Creditors with Alan Grochal. On the schedule submitted as Evidence at this hearing, Elizabeth McMillan-McCartney in her capacity as president of Sylmac, Inc. swore under penalty of perjury that Mr. McMillan was owed $34,607.72 as an unsecured creditor.

In the federal lawsuit filed one year after the fraud that Suvita Mehely perpetrated on this Court she stated in paragraph #15, *On July 23, 1993, the Parties entered into a written contract (EX) whereby Defendant acknowledged his indebtedness to Plaintiff."* The contract refers to Mr. McMillan's Bankruptcy claim. It reads," *In return, Caldwell, Jr. has made partial assignments of his $34,607.72 claim in Case No. 91-5-0254-50, In Re: Sylmac, Inc. U.S. Bankruptcy Court, District of Maryland. As of July,1993, Caldwell Jr's. claim has been fully assigned.* In 1998, Ms. McMillan-McCartney was paid.

Again, in paragraph #21 she makes reference to the assignment, *"At some point Defendant assigned a $34,607.72 receivable due Defendant to Plaintiff as partial repayment of the monies loaned to him by Plaintiff."*

Attorney Mehely's intent was that this Bankruptcy Schedule and the fraudulent First Accounting from the Estate of Caldwell McMillan, Sr, would convince the judge's that Mr. McMillan should not receive any personal representative commissions.

The Orphans Court judges relied on Ms. Melehy's testimony as an officer of the Court. Mike, I question the absolute ignorance of the judges. They can read; the schedule and letter is not ambiguous.

The court accepted Suvita's Melehy's representations as being true and accurate.

The Court had every right to accept Ms. Melehy's representations as she is an Officer of the Court.

This Court was injured because it made an adverse ruling against Mr. McMillan based on Attorney Melehy's fraud. Out of a possible $44,000.00 in personal representative commissions the court awarded Mr. McMillan $00.00 without explanation. Not by choice, he had been personal representative for his father's estate for 27 years.

At all times relevant hereto, Mr. McMillan acted with ordinary diligence and in good faith upon a meritorious cause of action or defense.

## APPLICABLE LAW

The decision to disqualify a defendant's chosen counsel is a serious matter and must be decided on a case-by-case basis. *Tessier,* 731 F. Supp. at 729 (citing *Richmond Hilton Assocs. v. City of Richmond,* 690 F.2d 1086, 1089 (4th Cir.1982) (holding that an "actual or likely" conflict of interest is required)); *In re Asbestos Cases,* 514 F. Supp. at 923-24. "The moving party bears a

high standard of proof to show that disqualification is warranted." *Tessier,* 731 F. Supp. at 729.

"In determining whether to disqualify counsel ... the trial court is not to weigh the circumstances 'with hair-splitting nicety' but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing 'the appearance of impropriety,' 'it is to resolve all doubts in favor of disqualification." *United States v. Clarkson,* 567 F.2d 270, 273 n. 3 (4th Cir. 1977) (quoting *Gas-A-Tron of Arizona v. Union Oil Co. of California,* 534 F.2d 1322, 1324-25 (9th Cir.1976)).

This Court is charged by *Wheat* to exercise its sound discretion and determine independently whether the continued representation by counsel impedes the integrity of the proceedings and whether the attorney should thus be disqualified. *Wheat,* 486 U.S. at 161-64, 108 S. Ct. 1692; *and see Williams,* 81 F.3d at 1324 ("*Wheat* thus requires a district court to exercise is own independent judgment as to whether the proceedings are likely to have the requisite integrity if a particular lawyer is allowed to represent a party. And, it made plain that for this purpose the court must have sufficiently broad discretion to rule without fear that it is setting itself up for reversal on appeal either on right-to-counsel grounds if it disqualifies the defendant's chosen lawyer, or on ineffective assistance grounds if it permits conflict-infected representation of the defendant.").

Several courts applied a two-prong test to determine whether disqualification is warranted when the actions by counsel implicate the integrity of the proceedings. *See Collins,* 920 F.2d at 628-29; *United States v. Urbana,* 770 F. Supp. 1552, 1557 (S.D.Fla.1991); *United States v. Walton,* 703 F. Supp. 75, 77 (S.D.Fla.1988). "First, although there need not be proof of actual wrongdoing, 'there must be at least a reasonable possibility that some specifically identifiable impropriety did in fact occur.'" *Hobson,* 672 F.2d at 828 (citing *Woods v. Covington Co. Bank,* 537 F.2d 804, 813

(5th Cir.1976). "Second, `a court must also find that the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in the case.'" *Id.*

Under Maryland Rule 19-308.4 it is professional misconduct for a lawyer to:

- violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
- commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

- engage in conduct that is prejudicial to the administration of justice;

Lawyers are professionally and ethically responsible for accuracy in their representations to the Court. Rule 3.1 of the Model Rules of Professional Conduct states that lawyers "shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good-faith argument for an extension, modification or reversal of existing law." Similarly, Rule 3.3 provides that "[a] lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." *Id.* at 3.3(a).

In Aoude v. Mobil Oil Corp, the Court stated:

The requisite fraud on the Court occurs where "it can be demonstrated, clearly and convincingly, that a party has sentimentally set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense."
Id. 892 F.2d 1115, 1118 (1st Cir.1989).

In Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated:

> "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. ... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted."

"Fraud upon the court" has been defined by the 7th Circuit Court of Appeals to... "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Kenner v. C.I.R.*, 387 F.3d 689 (1968); 7 Moore's Federal Practice, 2d ed., p. 512, ¶ 60.23.

In the United States, common law generally identifies nine elements needed to establish fraud: (1) a representation of fact; (2) its falsity; (3) its materiality; (4) the representer's knowledge of its falsity or ignorance of its truth; (5) the representer's intent that it should be acted upon by the person in the manner reasonably contemplated; (6) the injured party's ignorance of its falsity; (7) the injured party's reliance on its truth; (8) the injured party's right to rely thereon; and (9) the injured party's consequent and proximate injury. See, e.g., Strategic Diversity, Inc. v. Alchemix Corp., 666 F.3d 1197, 1210 n.3, 2012 U.S. App. LEXIS 1175, at *25 n.3 (9th Cir. 2012) (quoting Staheli v. Kauffman, 122 Ariz. 380, 383, 595 P.2d 172, 175 (1979)); Rice v. McAlister, 268 Ore. 125, 128, 519 P.2d 1263, 1265 (1975); Heitman v. Brown Grp., Inc., 638 S.W.2d 316, 319, 1982 Mo. App. LEXIS 3159, at *4 (Mo. Ct. App. 1982); Prince v. Bear River Mut. Ins. Co., 2002 UT 68, ¶ 41, 56 P.3d 524, 536-37 (Utah 2002).

MARPC §19-308.4 provides, in relevant part that it is professional misconduct for an attorney to:

> (a) violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another...

MARPC §19-308.1 provides, in relevant part:

> An applicant for admission or reinstatement to the bar, or an attorney in connection with a bar admission application or in connection with a disciplinary matter, shall not:
> * * *
>
> (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 19-301.6 (1.6).

MARPC §19-308.1(b) prohibits a lawyer from

> [F]ail[ing] to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 19-301.6 (1.6).

But for the fraud perpetrated upon this Court by Attorney Mehely there is a reasonable probability that this Court would have entered a Decision granting Personal Representative Caldwell McMillan Jr.'s Petition for Personal Representative Commission whereby he would have received the $43,784.42 in Personal Representative fees to which he is lawfully entitled to in Compliance with the guideline of Maryland Estates and Trusts #701. The commission is calculated using the gross value of the assets based on the First Administration Account ($1,186,234.00).

## PRAYER FOR RELIEF

WHEREFORE, Defendant Caldwell McMillian, Jr, proceeding *pro se*, who hereby moves this Court to enter an order disqualifying Attorney Mr. Andrew G. Balashov, Esq., Ms. Suvita Chiman Melehy, Esq., or any attorney from Melehy And Associates LLC, from Plaintiff Elizabeth McMillan McCartney in this action in the best interests of justice, or that this Court will allow and provide an oral hearing on the same to avoid the miscarriage of justice that will otherwise result.

*Mr. Caldwell McMillan, Jr.*
Mr. Caldwell McMillan, Jr.
1886 Crownsville Road
Annapolis, MD 21401
(410) 570-7847
donshajid@gmail.com

## VERIFICATION

I hereby realleges the foregoing paragraphs as if fully set forth herein. All exhibits attached hereto are hereby incorporated by reference as if fully set forth herein.

Pursuant 28 U.S. Code § 1746, I, the undersigned, swear (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct, and as to those statements made upon information and belief, I believe them to be true and correct to the best of my information and belief.

Executed at Annapolis, Maryland, on May 4th, 2020.

*Mr. Caldwell McMillan, Jr.*
Mr. Caldwell McMillan, Jr.
1886 Crownsville Road
Annapolis, MD 21401
(410) 570-7847
donshajid@gmail.com

## CERTIFICATE OF SERVICE

I, the undersigned hereby certify that on that 4th day of May 2020, that a true a copy of foregoing instrument was placed in the United States Mail, with Postage Pre-Paid, addressed to the Clerk of this Court and:

>Andrew G. Balashov, Esq.
>Suvita Chiman Melehy, Esq.
>Melehy And Associates LLC
>8403 Colesville Rd #610
>Silver Spring, MD 20910

*Mr. Caldwell McMillan, Jr.*
Mr. Caldwell McMillan, Jr.
1886 Crownsville Road
Annapolis, MD 21401
(410) 570-7847
donshajid@gmail.com